UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHANIE OWENS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security Administration, <br><br> Defendant. | CASE NO. C09-5732 BHS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for March 11, 2011 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4); and, as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 18, 26, 27, 28, 29, 30.)

After considering and reviewing the record, the undersigned finds that although plaintiff, who is in her mid-twenties, has struggled with a number of mental health conditions since her early teens, the ALJ was within his discretion in evaluating the medical records and testimony when concluding that plaintiff is capable of living independently and performing some jobs that are available in the national economy. Therefore, this Court recommends that the ruling of the Administration be upheld and that plaintiff's complaint be dismissed.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Plaintiff Stephanie Owens was born in 1987 (Tr. 7). Although many of her grades were below average to failing, she is highly intelligent -- plaintiff's main problem was failure to attend classes. According to a letter from plaintiff's alternative school, she was dropped from classes for non-attendance even though she needed just a couple of terms to graduate. Although she is bright and reads at least an hour a day, she apparently lacked the motivation to complete school (Tr. 16-17).

Plaintiff has had a history of mental health problems. These problems include severe mood reactivity, concentration, sleep disorder, self-mutilation, aggressiveness toward her mother, and ADHD with borderline personality traits versus disorder (Tr. 237). She was hospitalized on at least four occasions before entering a three-month residential facility in order to improve her coping abilities (id.). Nevertheless, by age 18, plaintiff was living independently in an apartment paid for by her mother (Tr. 237). According to her treading psychiatrist, she was able to manage her money, read articles, keep in touch with friends, shop, groom herself, and prepare meals (Tr. 237). She has demonstrated difficulty in extensive public interaction and with accepting criticism (id.). According to her last medical reports, she has been prescribed Seroquel, which she takes regularly to improve her ability to sleep and control her mood (Tr. 255). She has not demonstrated a problem with alcohol or drugs (Tr. 262, 268, 278), although she continues to smoke heavily (Tr. 262) and has continuing problems with obesity (Tr. 252, 272, 274, 277-78).

Plaintiff has never had a job. She indicated to her treating psychiatrist, Antonio Gutierrez, M.D., that she was planning on receiving SSI and was going to have enough money to put half for savings and half to pay for a car and other things that she needed (Tr. 253-54). She was not interested in obtaining vocational counseling, and found it difficult to "organize her thoughts toward getting involved in some regular activities work-wise." (Tr. 254.) Dr. Gutierrez concluded that nothing

prevented her from getting further training, further education, or trying out work activities that would help her supplement her minimal income (Tr. 262).

A reviewing psychologist, Leslie Postovoit, Ph.D., concluded in 2006 that plaintiff "retains the capacity for productive tasks, with limits considered." (Tr. 247.) A vocational expert testified at the hearing that in light of plaintiff's residual functional capacity, she was able to perform work in tasks that did not involve extensive contact with the public, such as janitor and cleaner II, which are both defined as medium, unskilled work, of which there are numerous positions available in the State of Washington (Tr. 21).

PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income Benefits on February 2, 2006 (Tr. 110). Ms. Owens' hearing was conducted on August 7, 2008 by Administrative Law Judge John F. Bauer ("ALJ") (Tr. 25-62). A psychological expert (Scott Mabee, Ph.D.), a vocational expert (William Weiss), and Ms. Owens' mother (Patricia Clemetson) testified, in addition to plaintiff (id.). The ALJ issued an unfavorable decision on October 29, 2008 (Tr. 7-21). While the ALJ found that the plaintiff had severe impairments at Step 2, including mood disorder, attention deficit hyperactivity disorder, and personality disorder with borderline traits (Tr. 9), he also found that she retained the residual functional capacity to perform a full range of work at all exertion levels except that her work should require only occasional contact with the public and co-workers (Tr. 12-20). Therefore, the ALJ concluded that Ms. Owens was not under a disability and denied benefits.

Following the ALJ's adverse decision, Ms. Owens filed a timely Request for Review with Social Security Appeals Council (Tr. 22-24), which denied her request for review (Tr. 1-3), leaving the ALJ's decision as the final administrative decision. This appeal followed.

Plaintiff alleges the following errors:

1. The ALJ allegedly failed to develop fully and fairly the record because the independent psychologist, Dr. Mabee, was not provided Exhibits 17 – 20.
2. Dr. Mabee's testimony allegedly is not credible because he did not review all of the medical records available prior to testifying.
3. The ALJ allegedly ignored or gave little weight to medical opinion evidence from Dr. Michael, Dr. Burke and Dr. Gutierrez.
4. The ALJ allegedly failed to comply with SSR 96-8P and SSR 85-15.
5. The ALJ allegedly failed to evaluate properly the testimony of Ms. Owens' mother.
6. The ALJ allegedly failed to evaluate properly Ms. Owens' subjective complaints.
7. The ALJ's hypothetical questions to the vocational expert allegedly failed to include Ms. Owens' non-exertional impairments.

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

## DISCUSSION

**1. The ALJ allegedly failed to develop the record fully and fairly because the independent psychologist, Dr. Mabee was not provided Exhibits 17 – 20.**

At the hearing, Scott W. Mabee, Ph.D. was retained by the Administration as an impartial psychological expert to evaluate and review plaintiff's medical and psychological records. For reasons that were not explained, Dr. Mabee only reviewed Exhibits 1F – 16F and not Exhibits 17F – 20F. The records that were missing included: office visits dated October of 2007 to June of 2008 from Peninsula Community Health Services (Tr. 250-53); progress notes dated March 13, 2008 to May 15, 2008 from Kitsap Mental Health Services (Tr. 254-312); a Department of Social and Health Services psychological examination, dated January 2, 2007 from Dr. Michael Burke (Tr. 313-16); and a Department of Social and Health Services psychiatric evaluation by Dr. Antonio Gutierrez, dated November 20, 2007 (Tr. 317-20).

The ALJ stated that he would send the additional records to Dr. Mabee after the hearing and ask Dr. Mabee to opine whether or not any of the records changed his opinion; he also invited the plaintiff to submit interrogatory questions to Dr. Mabee, if plaintiff desired (Tr. 31-33). Apparently, the ALJ failed to send the medical records to Dr. Mabee, and the plaintiff elected not to send any interrogatories. (ECF No. 27, attachment 1.)

Plaintiff alleges that the ALJ failed to fully and fairly develop the record and deprived Ms. Owens of having a supplemental hearing with Dr. Mabee.

The ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981)).  This duty is "especially important when plaintiff suffers from a mental impairment." Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991)). This is "[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset." Id. (*quoting* Social Security Regulation 83-20). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

There is no question that the ALJ failed to follow-up in sending the records to Dr. Mabee and it is unknown whether Dr. Mabee's opinion may have changed if he had been provided additional records.  Therefore, the question becomes whether or not the ALJ's findings and conclusions are supported without Dr. Mabee's further input.  If so, then the failure to send the additional records to Dr. Mabee would be harmless error.  As noted in Stout v. Commissioner of Social Security Administration, 454 F.3d 1050, 1055 (9th Cir. 2006), a mistake that is not prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion is considered harmless error.  If the ALJ would have reached the same conclusion despite the error and the decision is supported by substantial evidence and other legally valid reasons, then the ruling should be upheld. See id.; see also Carmickle v. Commissioner of Social Security Administration, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Although it would have been helpful to the ALJ for Dr. Mabee to have had all the evidence, it is clear from reviewing the ALJ's decision that he took into consideration all the records, including exhibits 17F through 20F, when evaluating plaintiff's case and that these records also supported the ALJ's conclusions.  The ALJ noted that Dr. Mabee's assessment of plaintiff's functional limitations was consistent with the April, 2006 findings of the state agency psychologist, Dr. Postovoit (Tr. 11-12), who concluded that plaintiff "retains the capacity for productive tasks" with some limitations (Tr. 237).  This opinion was affirmed by Bruce Eather, Ph.D. in July of 2006 (Tr. 240).  Significantly, the ALJ also reviewed each of the records that had not been sent to Dr. Mabee and concluded that they were largely consistent with Dr. Mabee's conclusions.  For instance, he reviewed the opinions of treating psychiatrist, Dr. Burke, who concluded that plaintiff had the ability "to understand, remember, and follow more complex tasks and to exercise judgment and make decisions." (Tr. 18.)  Although Dr. Burke noted marked limitations in plaintiff's ability to relate with co-workers and supervisors, he also concluded that she could function in a controlled work environment (Tr. 313-16).  Her treating psychiatrist, Antonio Gutierrez, M.D., concluded in 2008 that there was no reason she should not apply for some vocational counseling and try to engage in regular work activities (Tr. 254).  He noted that plaintiff was "incredibly bright" (Tr. 166) and demonstrated an ability to concentrate and provide attention to tasks by spending up to eight hours a day on a computer, as well as reading as least an hour per day (Tr. 11).

In summary, although it may have been helpful for the ALJ to have submitted the additional records to Dr. Mabee, the ALJ reviewed the records that had not been sent to Dr. Mabee and found them to be largely consistent with Dr. Mabee's conclusions.  Therefore, the failure to follow up with Dr. Mabee is harmless error.  See Stout, supra, 454 F.3d at 1055; see also Carmickle, supra, 533 F.3d at 1162-63.

**2. Dr. Mabee's testimony, allegedly, is not credible because he did not review all of the medical records available prior to testifying.**

As noted by the ALJ, Dr. Mabee opined that the plaintiff had moderate difficulties dealing with members of the public. This is supported by the record, as noted above.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v.

REPORT AND RECOMMENDATION - 8

Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In this case, as noted by the ALJ, the findings of treating physicians and the independent reviewers largely were consistent. While each of the providers noted that Ms. Owens had certain limitations and psychiatric disorders, none of the providers opined that Ms. Owens was incapable of working, although they all agree that she has some limitations. Therefore, the ALJ was within his discretion in evaluating the testimony, and accepting and rejecting certain portions of the record. and, his conclusions are supported by substantial evidence.

**3. The ALJ allegedly ignored or gave little weight to medical opinion evidence from Dr. Michael, Dr. Burke and Dr. Gutierrez.**

Dr. Michels.

Plaintiff contends that the ALJ failed to provide adequate reasons for rejecting the opinion of Paul Michels, M.D., an examining psychiatrist (ECF No. 8, pg. 11). Dr. Michels evaluated Ms. Owens in March of 2006 (Tr. 214). He provided a psychiatric evaluation and noted a depressive disorder, not otherwise specified, with borderline personality disorder. He also noted a GAF ("Global Assessment of Functioning") of approximately 60 to 65 and concluded:

> At present, the claimant's focus and concentration appear adequate. Pace and persistence seem good. She seems to have the intellectual capacity to understand, remember, and follow both complex and simple instructions. She seems capable to interacting appropriately with others. Again, stress may cause potential dramatic worsening in her symptoms. Essentially, her stability may be a bit tenuous. She probably has the basic capacity to manage her finances.

(Tr. 219.) Dr. Michels did not conclude that plaintiff was incapable of working. The ALJ considered Dr. Michels' opinion (see Tr. 10, 13) and concluded "Dr. Michels' report does not support the claimant's allegations of debilitating symptoms and limitations, and reflects normal objective findings." (Tr. 14.) Dr. Michels' findings were largely consistent with the ALJ's conclusions.

REPORT AND RECOMMENDATION - 9

Dr. Michels' opinion is accorded weight to the extent it is consistent with the residual functional capacity above; however, he did not specifically opine the effect stress would have on her functioning, therefore, that conclusory part of his opinion is not accorded weight. (Tr. 18.) The ALJ carefully analyzed those factors he considered in reviewing Dr. Michels' evaluation. Dr. Michels did not give specific limitations on plaintiff's ability to handle stress in a work environment. In light of the specific observations that Dr. Michels made regarding this plaintiff, the ALJ's conclusion regarding Dr. Michels' opinion are supported by substantial evidence in the record as a whole and should not be disturbed on appeal.

Dr. Burke.

Dr. Burke's evaluation, similarly, was considered by the ALJ in reaching his decision. The ALJ noted that Dr. Burke found one symptom of marked severity (an expression of anger) while all other symptoms were mild or moderate severity and were not inconsistent with the assessed limitation (Tr. 18). Similar to the ALJ's findings, Dr. Burke assessed marked limitations in plaintiff's ability to relate appropriately with co-workers and supervisors and to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Id.) The ALJ also noted that Dr. Burke's findings included an assessment for DSHS in January of 2006 in which Dr. Burke concluded:

> Stephanie's bipolar irritability, emotional reactivity, [and] mood lability may lead to conflict w/authority figures or confrontations w/customers. Through proper work training, medication, [treatment], and psychotherapy, these problems can be remedied.

Tr. 208.

If an impairment can be controlled effectively with treatment, it is not disabling for social security purposes. See Warre v. Comm'r of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). Therefore, even though Dr. Burke noted severe symptoms, he also concluded that they were controllable. He did not conclude that she was unemployable.

Dr. Gutierrez.

Dr. Gutierrez has been her treating psychiatrist. He regularly encouraged her to apply for vocational counseling and to get involved in "some regular activity work-wise" (Tr. 254, 262, 265, 268), but she failed to follow through with these recommendations. He notes that she has a very high IQ (170) (Tr. 278), and that her intelligence seemed to be superior, or at least above average. He noted that she was able to maintain her living situation independently (Tr. 279). The ALJ noted that Dr. Gutierrez concluded that she had severe limitations in her ability to respond appropriately to and tolerate pressures and expectations of a normal work setting (Tr. 319) but also noted that Dr. Gutierrez found her capable of "engaging in activities that require considerable concentration and attention." (Tr. 11.) These conclusions are fully supported by substantial evidence in the records. Again, Dr. Gutierrez did not conclude that plaintiff was disabled or unemployable, rather he continued to encourage to receive vocational counseling and work activities. This is not inconsistent with the ALJ findings.

In summary, although there is some disagreement in the record among her treating and reviewing physicians and psychologists, the ALJ proper evaluated their testimony and provided specific reasons for his conclusions, which should not be disturbed on appeal.

**4. The ALJ allegedly failed to comply with Social Security Rulings ("SSR") 96-8p and 85-15.**

The plaintiff claims that the ALJ failed to specify and evaluate, on a function by function basis, all of the relevant evidence regarding plaintiff's ability to do work related activities. (ECF No. 18, p. 16.)

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical factors alone, and a claimant has a severe impairment, a review is made of the claimant's residual functional capacity. Social Security Ruling (hereinafter "SSR") 96-8p, 1996 SSR

REPORT AND RECOMMENDATION - 11

LEXIS 5 at *3-*4. A determination regarding "residual functional capacity 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" Brown v. Astrue, 2010 U.S. App. Lexis 26760 at *6 (9th Cir. 2010) (unpublished opinion) (*quoting* id. at *5); see also SSR 96-9p, 1996 SSR LEXIS 6; Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998).

Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." See 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

Plaintiff asserts that the ALJ failed to evaluate the degree to which stress would affect her ability to work, in accordance with SSR 85-15. This ruling, SSR 85-15, provides in part:

> Stress and Mental Illness – Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands of "stress" of the workplace is often extremely difficult. This section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis.

SSR 85-15, 1985 SSR LEXIS 20 at *15-*16.

In this case, the ALJ took considerable effort in evaluating all of the available evidence. He considered the claimant's age, education, lack of work experience and ability to function when determining her vocational profile. Among other things, he noted that plaintiff's concentration and focus were adequate and her persistence and pace were good based on the results of mental status examination (Tr. 11). In addition to being "incredibly bright", plaintiff was regularly engaged in

activities that required a considerable amount of concentration and attention (id.).  Although she had difficulty getting along with "most kinds of people" (Tr. 12), she was able to live independently, was able to sleep 8 to 14 hours, with medication, was able to read, watch movies, listen to music and "hang[] out with friends" (Tr. 13).  Plaintiff was fully oriented and able to recall current news events and perform serial seven subtractions (Tr. 13-14).  She reported "doing well" and was looking forward to her boyfriend moving in with her (Tr. 14).  She had settled on a form of medication, Seroquel, which seemed to control many of her symptoms and allow her to sleep (Tr. 14).  Although she had been regularly counseled to seek work and do vocational training, she chose not to do so and spent her days with her friends (Tr. 15).  Although her mood was often referred to as "irritable" and "snappy" (Tr. 15), this was not resulting in any significant recent episodes of violence, depression or suicidal ideation (Tr. 15).

      The ALJ also noted a "possible secondary gain motivation" (Tr. 16).  There were several places in the record where her providers noted that she was "still waiting for social security benefits decision" (Tr. 16) and that she expected to receive "about $600 a month or so" in benefits (id.).  This, together with her unwillingness to engage in vocational counseling, led the ALJ to conclude that her difficulty with school and work were more related to motivational factors than mental health symptoms (Tr. 16).

      It is not for this court to weigh the evidence, but to consider whether or not there is substantial evidence to support the ALJ's decision.  There is such evidence here.  This is not inconsistent with the requirements of SSR 85-15 or SSR 95-6P.

**5. The ALJ allegedly failed to evaluate properly the testimony of Ms. Owens' mother.**

Plaintiff claims that the ALJ failed to consider properly the statements made by plaintiff's mother, Patricia Clemetson, who noted that her daughter had a longstanding history of mental illness (Tr. 53). Plaintiff had been kicked out of school (Tr. 54). Ms. Clemetson testified that she had taken her daughter out to apply for multiple jobs but "nothing ever seems to come through for her." (Tr. 55). She knows that under proper medication, her daughter is able to stay focused and stay on task but that with the medication she is receiving, she will sleep for a day and a half and "you can't have a job and hold it down if you're not able to get up and function." (Tr. 54.) She noted that her daughter had previously been verbally abusive and physically abusive toward her (Tr. 60). Ms. Owens did best in a residential treatment center (Tr. 60). She concluded that her daughter is easily distracted and can't finish anything. Although she would like her daughter to get a job, "I can't see it happening right now . . . ." (Tr. 61.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony "is competent evidence and 'cannot be disregarded without comment.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Bruce, 557 F.3d at 1115; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen, 100 F.3d at 1467 (*citing* Dodrill, 12 F.3d at 919).

The Ninth Circuit Court of Appeals upheld an ALJ's discounting of lay testimony where "the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if

REPORT AND RECOMMENDATION - 14

he did not clearly link his determination to those reasons." Lewis, 236 F.3d at 512. However, "where the ALJ"s error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056.

In this case, the ALJ considered Ms. Clemetson's statements and reached a different disability determination.  As noted by the ALJ, " [t]he claimant's mother's statement has been considered; however, I am unable to find it probative in terms of the ultimate issue of disability in light of the medical evidence and significant credibility issues in this case." (Tr. 20.)  While plaintiff's mother is sympathetic to plaintiff's condition, and of course, wants the best for her child, the ALJ did not commit error by failing to follow Ms. Clemetson's evaluation of disability.

**6.  The ALJ allegedly failed to evaluate properly Ms. Owens' subjective complaints.**

Although listed, plaintiff did not discuss her argument that the ALJ erroneously evaluated Ms. Owens' subjective complaints.  (See ECF No. 18, p. 20.)  Nevertheless, it is clear from the ALJ's decision that he considered the credibility of plaintiff's statements in evaluating her alleged disability.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (*citing* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  Id. at 972 (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations

omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284. The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan, 169 F.3d at 600).

As noted above, the ALJ made several references and specific findings in his decision to discuss why the reported daily activities could be transferable to a work setting. The simple fact remains, according to the ALJ, that plaintiff has been more inclined to seek social security benefits than to find work in the economy that she is capable of performing. The ALJ provided specific and cogent reasons for concluding as such and this finding should not be disturbed on appeal.

**7. The ALJ's hypothetical questions to the vocational expert allegedly failed to include Ms. Owens' non-exertional impairments.**

At step five, the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that claimant could perform in light of claimant's age, education, work experience, and residual functional capacity. See Tackett v. Apfel, 180 F.3d at 1099; Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996) (citations omitted).

There are two ways that the ALJ can do this: "(a) by the testimony of a vocational expert, or (b) by reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids"). Tackett, 180 F.3d at 1100-01 (*citing* Desrosiers v. Secretary of Health and

Human Servs., 846 F.2d 573, 577-78 (9th Cir. 1988)); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (*citing* Tackett, 180 F.3d at 1100-01)).

In this case, the ALJ relied on the testimony of a vocational expert, William Weiss (Tr. 48-52). Admittedly, his hypothetical questions to Mr. Weiss were very limited. In essence, he asked Mr. Weiss to assume that plaintiff's only problem is that she should have only occasional contact with the public or co-workers (Tr. 49-50). Based on this hypothetical, the vocational expert assumed that plaintiff would be able to perform janitorial services and cleaning services (Tr. 49). Plaintiff contends that the hypothetical should have included the inability to tolerate pressure in a normal work setting and impulsivity (ECF No. 18, p. 20).

As noted above, this conclusion regarding plaintiff's limitations is supported by the medical evidence that was considered properly by the ALJ. Additionally, the ALJ evaluated the residual functional capacity based on information provided by state agency medical consultants. The state agency psychologist consultant also reviewed the record and opined "that the claimant could have difficulties in a job that required extensive public interaction and with accepting criticism, due to difficulties managing others' demands of her unless she was very motivated to comply. It was determined that the claimant had moderate limitations in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors." (Tr. 18(*citing* Tr. 236-37).) The ALJ concluded that this opinion was consistent with the residual functional capacity set forth in his conclusions (id.). This is supported by the evidence in the record and is consistent with the ALJ's conclusions. Therefore, although the hypothetical to the vocational expert was sparse, this hypothetical, in conjunction with information provided by the state agency on plaintiff's residual functional capacity, is sufficient to support the ALJ's decision.

<u>New Medical Evidence.</u>  Finally, in plaintiff's reply brief, plaintiff raised for the first time that the case should be reversed and remanded so that the ALJ could consider new medical evidence from Overlake Medical Center and Fairfax Hospital.  (ECF No. 27, pp. 1-2.)  Apparently, these records involve Ms. Owens' experience at high school.  There is no evidence that these records ever were submitted to the ALJ or the Administration at any point during these proceedings.  The Appeals Council has the right to consider new evidence, however "our statutory jurisdiction is confined to review of the 'final decision of the Secretary.'" <u>Woodsum v. Astrue</u>, 711 F. Supp. 2d 1239, 1247-48 (W.D.Wash. 2010) (adopting reasoning of, and quoting, <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992) (*quoting* 42 U.S.C.§ 405(g))).  When a plaintiff contends that remand is appropriate in light of additional evidence, the claimant has to show "that the additional evidence was both 'new' and 'material' to determining disability, and that he or she 'had good cause for having failed to produce that evidence earlier.'"  <u>Woodsum</u>, 711 F. Supp. 2d at 1250-51 (*quoting* <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001)).

Plaintiff has failed to meet this burden and has failed to submit this information at any level until now.  There is no reason to think that records dating back to plaintiff's high school days would be at all helpful in evaluating this case further.  Therefore, remand for purposes of considering this evidence is not recommended.

## CONCLUSION

It is recommended that the ALJ's decision be upheld and that plaintiff's complaint be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the

1   district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b),

2   the clerk is directed to set the matter for consideration on March 11, 2011, as noted in the caption.

3         Dated this 14th day of February, 2011.

                                                J. Richard Creatura
                                               United States Magistrate Judge